Filed 4/4/25  P. v. Davis CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B333584 |
| Plaintiff and Respondent, | (Super. Ct. No. BA371110) |
| | (Los Angeles County) |
| v. | |
| LORENZO DAVIS, | |
| Defendant and Appellant. | |

Lorenzo Davis appeals the trial court's order denying his petition for resentencing pursuant to Penal Code[1] section 1172.6 (former section 1170.95) concerning his 2011 voluntary manslaughter conviction by plea.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 960, 971.)  Davis contends, among other arguments, that the court erred by relying upon the preliminary examination transcript and engaging in impermissible factfinding.  We conclude that the preliminary examination transcript conclusively establishes as a matter of law that Davis

---

[1] All statutory references are to the Penal Code.

is ineligible for resentencing.  (*People v. Patton* (2025) 17 Cal.5th 549, 565-566 ["Where facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not ' "factfinding involving the weighing of evidence or the exercise of discretion" ' "].)  We affirm.

## FACTS AND PROCEDURAL HISTORY

This appeal concerns crimes committed in Los Angeles by Davis, an East Coast Crips criminal street gang member, against three strangers walking to a neighborhood liquor store.  Davis wore gloves and held a firearm; one victim was shot and killed as he fled through a hospital parking lot.  Within minutes, police officers located and detained Davis based upon a description of his height and clothing (white T-shirt and black pants with stripe).  When detained, Davis had no firearm and a later test of his hands for gunshot residue was inconclusive.  Police officers found 13 shell casings of the same caliber at the scene of the shooting.  The shell casings had no fingerprints.  A surviving victim identified Davis at a field show-up and at the preliminary examination, however, as the lone shooter.

### *Preliminary Examination Transcript*

Joe Flores and Joe Pineda testified at the preliminary examination in the prosecution against Davis.  On May 7, 2010, Flores, Pineda, and Arturo Segura walked to a liquor store near South Main Street in Los Angeles.  An African-American man driving a red-colored four-door Pontiac shouted at the three men "to get off the street."  There were no passengers in the vehicle.  The driver identified himself as an East Coast Crips gang member, made derogatory comments about a rival gang, and asked the three men if they were from the rival gang.  Flores and his companions replied that they were not gang members and

were there to buy beer.  The driver stopped his vehicle and threatened to shoot the men.  He reached under his shirt near his belt as though he had a firearm but never produced one.  Flores testified that the driver "had his hand under his shirt" and "was holding his belt pretending that he had a gun."  Flores and his companions ignored the driver and continued to walk to the liquor store.

After the driver of the red Pontiac drove away, two men left a nearby barbershop and asked Flores and his friends if they were from the neighborhood.  The three men replied that they were walking to the liquor store to buy beer.  The barbershop men identified themselves as East Coast Crips street gang members.

Flores and his friends purchased beer at the liquor store and walked toward home.  The driver of the red Pontiac returned, this time with a front-seat and a rear-seat passenger.  Flores could not see or describe the front-seat passenger.  Flores and his friends ran though a hospital parking lot.  The driver of the Pontiac followed and the rear-seat passenger left the vehicle.  He was wearing gloves and held a firearm.

As Flores was running, he heard more than four or five gunshots, some whizzing by his head.  He thought the bullets were fired from a single firearm.  Flores turned around and saw that Segura had been shot.  Flores turned back to help Segura but saw the rear-seat passenger run toward him.  Flores was "pretty sure" that the rear-seat passenger was still armed.  Flores feared that he would be shot, and therefore ran toward the hospital entrance.

The rear-seat passenger approached Segura and punched and kicked him as he lay on the ground.  The passenger then

returned to the red Pontiac rear-seat and the driver drove away. Flores called for police assistance and officers soon arrived. They located and detained Davis based upon Flores's description of the shooter's clothing. When placed in the patrol vehicle, Davis asked if this was "about a shooting or something."

In a field show-up and again at the preliminary examination, Flores identified Davis as the shooter; he was certain that Davis was "the guy." Flores described the shooter as tall, skinny, light-skinned, and weighing 145 pounds; he stated that he saw the shooter's face and his clothing during the crimes.

Segura died from a gunshot wound to his chest.

*Nolo Contendere Plea*

On November 21, 2011, Davis pleaded nolo contendre to voluntary manslaughter and two counts of assault with a semiautomatic firearm. (§§ 192, subd. (a), 245, subd. (b).) He also admitted that he personally used a firearm and committed the crimes to benefit a criminal street gang. (§§ 12022.5, subd. (b), 186.22, subd. (b)(1)(C).)[2] Through counsel, Davis stipulated to a factual basis for the plea based upon the police reports and the preliminary examination transcript. He did not admit, however, that he was the sole or actual shooter or admit the legal theory or theories upon which the conviction rested. Pursuant to a plea agreement, the trial court imposed a prison sentence of 35 years.

---

[2] As part of the plea agreement, the prosecutor amended the information to charge voluntary manslaughter instead of murder, and personal weapon use pursuant to section 12022.5, subdivision (b) instead of section 12022.53, subdivisions (b)-(e).

4

*Resentencing Petition*

On January 6, 2022, Davis filed a section 1172.6 petition for resentencing alleging that he was convicted pursuant to theories of imputed malice.[3] The prosecutor opposed the petition and submitted the transcripts of Davis's preliminary examination and plea reflecting that Davis was the sole and actual shooter. The trial court concluded that Davis did not establish a prima facie case, and it denied the resentencing petition without issuing an order to show cause. The trial judge stated: "[T]he undisputed facts at the preliminary hearing . . . were that Mr. Davis was the shooter in this instance and . . . that's how the case was prosecuted."

Davis appeals and contends that the trial court erred by relying upon the preliminary examination transcript and engaging in impermissible factfinding. The Attorney General supports Davis's arguments in part. We disagree with both parties.

## DISCUSSION

Davis argues that his record of conviction does not establish that he was the actual shooter and that the prosecutor could have pursued a theory of accomplice liability.

Section 1172.6 was enacted to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis, supra,* 11 Cal.5th 952, 959.) Section 189, subdivision (e)(3), as amended, now provides that in cases where a death occurs during the

_____

[3] Davis checked each checkbox allegation on the pre-printed section 1172.6 resentencing form.

perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), a person is liable for murder only if the person was the actual killer, the person acted with intent to kill in aiding, assisting, or soliciting the killer, or if the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

Section 1172.6 provides a procedure to petition for resentencing for those who could not be convicted of murder pursuant to sections 188 and 189, as amended, effective January 1, 2019. (*People v. Lewis*, *supra*, 11 Cal.5th 952, 957.) If a defendant's petition is facially sufficient, the trial court must appoint counsel, entertain briefing, and proceed to the order to show cause hearing to determine whether defendant has made a showing of eligibility under section 1172.6, subdivision (c). (*Lewis*, at pp. 957, 960, 971.) At this stage, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) The trial court may deny the petition at the prima facie state of the proceedings only when the facts in the record of conviction *conclusively* refute the allegations of the petition. (*Id.* at p. 974 [petition may be dismissed if allegations are "clearly meritless" in light of the record of conviction].) It must do so without factfinding involving the weighing of evidence or the exercise of discretion. (*Id.* at p. 972.) Prima facie determination is a question of law that we review independently. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

The preliminary examination transcript is part of the record of conviction. (*People v. Flores* (2022) 76 Cal.App.5th 974,

6

989, fn. 11.)  Until recently, there was disagreement among the appellate courts whether a trial court may consider the preliminary examination transcript at the prima facie stage when a conviction rests upon a plea.  Our Supreme Court resolved that disagreement in *People v. Patton*, *supra*, 17 Cal.5th 549.  *Patton* held that a petitioner's conclusory allegations of entitlement to resentencing relief pursuant to section 1172.6 are insufficient to make a prima facie showing where uncontroverted facts related at the preliminary examination show that the petitioner was convicted under a still-valid theory of liability.  (*Id.* at p. 557.)  Accepting undisputed facts from the record of conviction does not constitute factfinding involving the weighing of evidence or the exercise of discretion.  (*Id.* at p. 563.)

The purpose of a section 1172.6 prima facie inquiry is to distinguish petitions with potential merit from those that are "clearly meritless."  (*People v. Lewis*, *supra*, 11 Cal.5th 952, 971.)  Here the transcript of the preliminary examination reflects that Davis was convicted of voluntary manslaughter as the sole and actual shooter of victim Segura.  (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [as petitioner was the only participant in the killing, he was not convicted under an invalid theory and could not have made a prima facie showing of relief].)  Davis's contention that other men present in the red Pontiac may have been armed and may have shot Segura is speculative and not supported by the uncontroverted evidence.  (*People v. Patton*, *supra*, 17 Cal.5th 549, 567 ["mere latent, speculative possibilities . . . a hypothetical alternate direct perpetrator cannot be conjured from thin air"].)  Davis's conclusory allegations are insufficient to make a prima facie showing pursuant to section 1172.6.

Moreover, **t**he trial court did not deny Davis due process of law by the summary denial of his section 1172.6 resentencing petition.  (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 588-589.) Davis is not being prosecuted for additional crimes and is not being subject to additional punishment.  (*Id.* at p. 588 [a section 1172.6 resentencing proceeding is not a criminal prosecution].) He is merely seeking leniency for a valid conviction.  (*Ibid.*)

*DISPOSITION*

We affirm the order denying the resentencing petition.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:



YEGAN, J.



CODY, J.

8

Lisa B. Lench, Judge

Superior Court County of Los Angeles

_____

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.