Filed 1/28/26  P. v. Sandoval CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIO SANDOVAL,<br><br>    Defendant and Appellant. | H052838<br>(Santa Clara County<br>Super. Ct. No. CC597299) |

In 2008, Julio Sandoval was convicted of one count of murder and two counts of assault with a deadly weapon, and then sentenced to 33 years to life in prison.  In 2019 and again in 2023, Sandoval petitioned for resentencing under what is now Penal Code section 1172.6, but the trial court denied the petition.  (Subsequent undesignated statutory references are to the Penal Code.)

Sandoval appealed, and we appointed counsel to represent him.  Counsel filed an opening brief under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), stating the case and the facts, but raising no issues and asking the court to review the record independently.  In addition, Sandoval filed a supplemental brief asserting that he is eligible for relief under section 1172.6 on various grounds.  Although we are not required to review the record independently on postconviction review (*Delgadillo*, at pp. 224-231), we have reviewed the arguments raised in Sandoval's brief.  As explained below,

we conclude that there is no arguable issue for appeal and therefore affirm the order denying relief.

## I. BACKGROUND

### A. The Offenses

In the early morning of July 2, 2005, Sandoval was at a nightclub with three companions. The four had a violent confrontation with a group of bouncers that escalated into a knife attack on the bouncers. One bouncer, Dario Arriola, died, and two others were seriously injured.

Before the fight began, the bouncers had several repeated tense interactions with Sandoval in the club, as they asked him to keep on his shirt—which, importantly, was red—under the club dress code. In addition, Sandoval tried to dance with a woman, but she rebuffed him. After closing, Arriola, who was close with the woman, hugged and kissed her outside the club, near Sandoval. Sandoval asked the woman, "why are you with that punk?"

As the club staff and patrons were leaving the parking lot, Sandoval's group attacked the bouncers. The bouncers fought back, and one knocked Sandoval down. In response, Sandoval took off his shoe, and someone yelled that he had a knife. Sandoval's group then chased the bouncers, sequentially isolating and attacking Arriola and two other bouncers.

Arriola suffered six knife wounds, including a four-inch stab to the chest that punctured his aorta. On a knife recovered from a trash can near the scene, forensic investigators found Arriola's blood on the blade and Sandoval's blood on the handle. Police also recovered a red shirt, on which forensic analysis found Sandoval's DNA.

### B. The Charges

The prosecutor filed a complaint charging Sandoval and his three companions with the murder of Arriola (§ 187) and two counts of assault with a deadly weapon

2

(§ 245, subd. (a)(1)).  Sandoval's companions pleaded guilty to assault with a deadly weapon and received sentences of one year, two years, and four years.  However, Sandoval did not enter into a plea bargain, and the prosecutor filed an information charging Sandoval with murder under section 187 and alleged that he "personally used a deadly and dangerous weapon, a(n) knife" under section 12022, subdivision (b)(1).  In addition, the information charged Sandoval with one count of assault with a deadly weapon under section 245, subdivision (a)(1) with an allegation that he personally inflicted great bodily injury under sections 1203, subdivision (e)(3) and 12022.7, subdivision (a), as well as a second count with no enhancement allegation.

## C.  Trial and Sentencing

At trial the jury was instructed that Sandoval could be found guilty of murder on a theory of aiding and abetting if the jury found that he was guilty of assault with a deadly weapon, a coparticipant committed murder, and "[u]nder all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the Murder or Manslaughter was a natural and probable consequence of the commission of Assault with a Deadly Weapon."  However, the jury was instructed that to find Sandoval guilty of first degree murder it had to find, among other things, that he had an intent to kill.  In particular, the jury was instructed that to find Sandoval guilty of first degree murder the People had to prove that he "acted willfully, deliberately, and with premeditation."  The instruction specified that a defendant "acted *willfully* if he intended to kill."

The jury not only found Sandoval guilty on all counts; it also found that he was guilty of first degree murder.  In finding first degree murder, the jury also found true the special allegation that "in the commission and attempted commission of the offense charged above, the defendant, Julio Sandoval, personally used a deadly and dangerous weapon."  (Boldface and capitalization omitted.)

3

The trial court sentenced Sandoval to 25 years to life for the murder conviction, consecutive to 1 year for the deadly weapon enhancement, 4 years total on the assault convictions, and 3 years for the great bodily injury enhancement. The judgment was affirmed on appeal. (*People v. Sandoval* (July 12, 2010, H033728) [nonpub. opn.] [2010 WL 2725409, *7-9].)

**D. Petition for Resentencing**

In August 2022, after withdrawing an earlier petition, Sandoval filed a renewed form petition under section 1172.6. The trial court appointed counsel and ordered briefing. The prosecution opposed, arguing, among other things, that Sandoval was ineligible for relief because the jury was instructed to find Sandoval guilty of first degree murder only if he intended to kill Arriola. The court agreed. It found Sandoval ineligible for relief under section 1172.6 because "[t]he only lawful path to convict Petitioner of first-degree murder, and the true finding of the special allegation, under the instructions given required a finding that Petitioner intended to aid and abet a premeditated murder." The court also concluded that the jury "necessarily determined beyond a reasonable doubt that [Sandoval] was the actual killer" because it found the allegation of personal knife use in the murder count to be true.

Sandoval filed a timely notice of appeal.

## II. DISCUSSION

In an appeal from an order denying postconviction relief, we are not required to conduct an independent review of the record where, as here, appellate counsel finds no arguable issues. (See *Delgadillo*, *supra*, 14 Cal.5th at pp. 224-231.) However, where, as here, defendant has filed a supplemental brief, we evaluate the arguments raised in that brief. (*Id.* at pp. 231-232.) Here, we have reviewed Sandoval's brief, and we conclude there are no arguable issues for appeal in his various claims, which we address below.

4

## A. Natural and Probable Consequences

Sandoval first contends his conviction cannot stand because the jury was instructed on the natural and probable consequences doctrine, which can no longer support a murder conviction because it imputes malice based solely on participation in another crime. (See § 188, subd. (a)(3).) There is no arguable basis for this claim because the natural and probable consequences doctrine played no role in Sandoval's conviction. Instead, in convicting Sandoval of first degree murder, the jury found that he personally used a knife in Arriola's murder and intended to kill him.

Effective January 1, 2019, the Legislature amended sections 188 and 189 to eliminate several theories of liability for murder based on imputed malice, including the natural and probable consequences doctrine. (*People v. Patton* (2025) 17 Cal.5th 549, 556; *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Under that doctrine, defendants who aid and abet a target crime are deemed guilty of a nontarget crime that was committed by a participant and was a reasonably foreseeable consequence of the target crime. (*People v. Smith* (2014) 60 Cal.4th 603, 611.) After the 2019 amendments, a defendant may not be held guilty of murder based on such a theory. (*People v. Gentile* (2020) 10 Cal.5th 830, 847-848 (*Gentile*), superseded by statute on other grounds as stated in *People v. Oyler* (2025) 17 Cal.5th 756, 836.) However, directly aiding and abetting a murder with an intent to kill remains a valid theory. (See *Gentile*, at p. 850.)

The Legislature made its 2019 changes to homicide law retroactive by providing for resentencing in what is now section 1172.6. (See *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).) Under this section, a person may petition to have a conviction vacated and to be resentenced if the person was charged with murder under the natural and probable consequences doctrine, was convicted, but presently could not be convicted of murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) If a petitioner establishes a prima facie case, and the prosecution

5

then fails to prove at an evidentiary hearing beyond a reasonable doubt that "the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019," the petitioner's conviction shall be vacated and the petitioner resentenced on the remaining charges. (§ 1172.6, subd. (d)(3).)  However, if the record conclusively establishes that the petitioner was convicted of murder on a theory that remains valid, the petitioner is not entitled to an evidentiary hearing and is ineligible for resentencing under section 1172.6. (See *Strong*, at pp. 708, 710; *Lewis*, *supra*, 11 Cal.5th at p. 967.)

Here, Sandoval was ineligible for relief because the jury found that he personally used a knife in Arriola's murder and that he had an intent to kill.  The court observed that the record of conviction belied Sandoval's contention that his murder conviction rested on the natural and probable consequences doctrine.  The jury convicted Sandoval of first degree murder, and it was instructed that to do so, it had to find that Sandoval acted willfully and that Sandoval acted willfully if "he intended to kill."  Thus, Sandoval was convicted of murder because he acted with an intent to kill, which remains a valid murder theory, and therefore he is ineligible for resentencing under section 1172.6.

### B.  Additional Claims

Sandoval raises several additional arguments, but none of them provides an arguable basis for appeal.

#### 1.  *Reckless Indifference*

Sandoval contends that there was insufficient evidence that he acted with reckless indifference.  Reckless indifference is relevant in felony murder cases because section 189 permits a felony murder conviction only if the defendant was the actual killer, aided and abetted murder with an intent to kill, or was a "major participant" in the offense and "acted with reckless indifference to human life."  (§ 189, subd. (a)(3).)  However, Sandoval was not charged with felony murder and the jury was not instructed

6

on that theory. As a consequence, Sandoval's evidence concerning reckless indifference does not suggest that he was convicted on a theory of murder that is no longer valid and therefore does not suggest that he is eligible for resentencing under section 1172.6.

### 2. *Diminished Capacity*

Sandoval also argues that the trial court should have instructed the jury on diminished capacity. This claim also fails to provide an arguable basis for appeal from the denial of resentencing. While diminished capacity may affect Sandoval's guilt, it is not related to any changes to homicide law after his trial, and section 1172.6 authorizes resentencing only if, among other things, a petitioner "could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019.*" (§ 1172.6, subds. (a)(3) & (d)(3), italics added.)

### 3. *Imperfect Self-Defense*

Sandoval raises other challenges to his conviction as well. For example, he asserts that the prosecutor engaged in misconduct in his closing argument. In addition, contending that the bouncers were the aggressors, who pursued, challenged and provoked him, and that he feared for his life, Sandoval asserts he had a claim of imperfect self-defense on which the jury should have been instructed. However, section 1172.6 does not allow a convicted defendant "to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) Instead, as noted above, it allows a defendant to seek resentencing if he or she was convicted on a murder theory that is no longer valid because of changes to homicide law made effective January 1, 2019. (§ 1172.6, subds. (a)(3) & (d)(3).)

### 4. *Mitigating Factors*

Finally, Sandoval points to his young age at the time of the charged offenses and the trauma that he suffered as a child. These are mitigating factors to be considered in selecting a sentence (Cal. Rules of Court, rule 4.423(b)(3) & (6)), and they also might

provide a basis seeking to strike an enhancement (see, e.g., § 1385, subd. (c)(2)(E)). As a consequence, they might be relevant if Sandoval were resentenced. However, they do not suggest that he is eligible for resentencing under section 1172.6.

Accordingly, we conclude that Sandoval has failed to provide an arguable basis for appealing the denial of his petition for resentencing.

### III. DISPOSITION

The order denying the section 1172.6 petition is affirmed.

 

 

_____

BROMBERG, J.

WE CONCUR:

_____

DANNER, ACTING P. J.

_____

KULKARNI, J.*

_People v. Sandoval_
H052838

_____

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.